IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3113 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| JOSE A. ESPINOZA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jose A. Espinoza has filed a Motion to Vacate under 28 U.S.C. § 2255 (filing no. 110) in which he claims that his counsel was ineffective. Espinoza claims that his counsel was ineffective at sentencing for a variety of reasons, including: (1) Espinoza should not have received an obstruction-of-justice enhancement; (2) Espinoza was entitled to a reduction for acceptance of responsibility; (3) Espinoza should not have been subjected to a 20-year statutory minimum; (4) Espinoza should not have received a weapons enhancement; (5) Espinoza was only responsible for 95.6 grams of actual methamphetamine; and (6) Espinoza's criminal history was miscalculated. The government has filed an answer (filing no. 122). The government has also filed a brief in support of the answer. (Filing No. 123.) Espinoza filed a reply. (Filing No. 128.)

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts (the "Rules"), I conclude that no evidentiary hearing is required. On the contrary, and pursuant to Rule 4(b) of the Rules, I find and conclude that it plainly appears from Espinoza's motion, any attached exhibits, and the record of the prior proceeding that Espinoza is not entitled to relief.

Accordingly, the motion will be denied and dismissed with prejudice. Briefly, the reasons for this decision are set forth below.

## *I. BACKGROUND*

While Espinoza lived in Omaha, Nebraska, he was intimately involved with the East Side Locos street gang in Grand Island, Nebraska. A confidential informant by the name of Ubaldo Lopez ("Lopez") made controlled purchases of methamphetamine and a gun from Espinoza. (E.g., Filing No. 115 at CM/ECF pp. 83-92 & Exhibits 1-8.)

In April of 2011, while pending trial, and before any plea or plea agreement, Espinoza was in the Saunders County Jail with one of his partners in crime, Hugo Galaviz.[1] Espinoza and Galaviz came into contact with Carmine Malanga who Espinoza believed was a member of the Hell's Angels. During the month of April 2011, Espinoza solicited Malanga to arrange the killing of Lopez by the Hell's Angels because Espinoza "wanted him shut up. He didn't want him to show up in court and testify." (Filing No. 115 at CM/ECF pp. 27 & 31.) Espinoza did not care whether Lopez's girlfriend and children were killed in the process.

Espinoza also sought to have another man killed. That man (who the government believed was Gilbert Ontiveros ("Ontiveros")) was a member of the East Side Locos. (E.g., Filing No. 115 at CM/ECF pp. 94-96.) That fellow, who was in the Nebraska State Penitentiary, was also suspected of being a "snitch." Compared to the killing of Lopez, however, Espinoza took fewer concrete steps to effectuate that murder. In fact, the conversation with Malanga about that killing was only a "quick" one. (Filing No. 115 at CM/ECF pp. 44-45.) In contrast, Espinoza actively worked to have Lopez killed. For example, Espinoza provided Malanga with a photo of Lopez

---

[1]Galaviz signed a plea agreement in January of 2011, and it was filed on January 24, 2011. (Filing No. 28 in 4:10CR3116.) His plea was accepted, and he was found guilty on February 2, 2011. (Filing No. 33 in 4:10CR3116.) When they were together in April in the jail, Espinoza began to distrust Galaviz because he suspected that Galaviz had done a deal with the government. (Filing No. 115 at CM/ECF pp. 42-43.)

and sheet of paper with Lopez's name together with specific information about where Lopez's girlfriend worked so the killer could find Lopez through the girlfriend. (Filing No. 115 at CM/ECF pp. 27, 39 & Exhibits 1, 4.) He also provided Malanga with contact information for Espinoza's wife, and Espinoza told Malanga that the compensation for the "hit" would be handled through her. (Filing No. 115 at CM/ECF pp. 33-35 & Exhibit 2.)

As it turned out, Malanga was an informant for the government. After the government confronted Espinoza with Malanga's information, Espinoza signed a plea agreement on July 8, 2011, and the agreement was filed on July 25, 2011. (Filing No. 62.) Among other things, the defendant agreed to plead guilty to distribution of actual methamphetamine and transfer of a gun to a prohibited person. The plea agreement specifically provided, among many other things, that the parties agreed to the following:

> * The defendant was responsible as a result of his own actions and relevant conduct for at least 150, but not more than 500, grams of actual methamphetamine, including 95.6 grams of actual methamphetamine sold by the defendant to a cooperating individual regarding the count of conviction for which the defendant was pleading guilty. (Filing No. 62 at CM/ECF pp. 3, 5.) Accordingly, the base offense level was 34. (*Id.* at CM/ECF p. 5.)

> * The defendant should receive a two-level upward adjustment for possession of a weapon in connection with the offense of conviction. (*Id.*)

> * The defendant should receive a two-level upward adjustment for obstruction-of-justice, and there was no agreement that the defendant was entitled to a reduction for acceptance of responsibility. (*Id.*)

* The defendant would not be prosecuted in the District of Nebraska for an attempt to hire Carmine Malanga to arrange to have a witness in this case killed. (*Id.* at CM/ECF p. 1.)

* Despite the obstruction-of-justice and solicitation-to-murder admissions contained in the plea agreement, the government agreed to make a sentencing recommendation at the low end of the Guideline range calculated in accordance with the plea agreement. (*Id.* at CM/ECF. p. 7.)

On July 22, 2011, the government filed a notice of information to establish prior convictions. (Filing No. 58.) The notice alleged that the defendant had been convicted of a Class IV felony regarding possession of a controlled substance on June 12, 2009. This meant, if the government proved the facts recited in the notice, or the defendant admitted them, that the defendant would face a 20-year minimum prison sentence.

On the same day the plea agreement was filed, July 25, 2011, Judge Zwart conducted a Rule 11 proceeding. As usual, Judge Zwart's inquiry was searching and extensive. (Filing No. 66.[2]) Among other things, Espinoza agreed that he was satisfied with the conduct of his counsel (Glenn Shapiro), that he fully understood the terms of the plea agreement, that he understood that he was confronted with a statutory minimum sentence of 20 years, that he admitted to the conviction that triggered the statutory minimum sentence, and that there was a factual basis for each of the counts of conviction for which Espinoza was pleading guilty.

Judge Zwart submitted her findings and recommendations suggesting that I find the defendant guilty and accept the plea agreement. (Filing No. 63.) I adopted the findings and recommendations and found the defendant guilty, but I deferred acceptance of the plea agreement until sentencing. (Filing No. 67.)

---

[2]See also Espinoza's petition to enter a plea guilty. (Filing No. 61.)

-4-

At the sentencing proceeding, I noted that Espinoza had filed a complaint against Shapiro with the Nebraska Counsel on Discipline. I inquired of Espinoza about that complaint, and, unprompted, he requested leave to withdraw the grievance against Shapiro. (Filing No. 115 at CM/ECF p. 3.) I agreed.

I then inquired of counsel and Espinoza whether they wanted me to adopt the plea agreement. I closely questioned Espinoza. Espinoza claimed that he did not understand he could receive an obstruction-of-justice enhancement when he signed the plea agreement and appeared before Judge Zwart, but then he told me that he now understood that if I accepted the plea agreement, he would receive an obstruction-of-justice enhancement even though the government would not prosecute him separately for his solicitation to murder. (Filing No. 115 at CM/ECF pp. 4-8.) He also stated that he thoroughly understood all the other terms of the plea agreement. At Espinoza's explicit request, I adopted the plea agreement.

We then conducted an extensive hearing about whether Espinoza should receive a reduction for acceptance of responsibility despite the obstruction-of-justice enhancement and whether I should vary or depart downward. The testimony of Malanga and the case agent were taken. I decided that this case was not of the unusual variety warranting an adjustment for acceptance of responsibility given Espinoza's attempt to have someone murdered. I also ruled that there was no basis for a variance (or departure) below the calculated Guideline range of 324 to 405 months in prison.[3]

---

[3] His total offense level was 38 and his criminal history category was IV. (Filing No. 96.) Espinoza had been charged with murder in 2003, but that charge was reduced to being an accessory to a felony. Apparently, Espinoza and the victim had a dispute about a counterfeiting operation. (Filing No. 93 at CM/ECF p. 10 ¶ 58.) For that crime, Espinoza was sentenced to 20 months to 5 years in prison. Espinoza also had an assault conviction generating 2 points and a felony drug conviction that generated 2 points, rather than 3 points, because he received 180 days in jail. (*Id.* at CM/ECF p. 11 ¶¶ 59-60.)

Espinoza was sentenced to 324 months on the drug charge and 120 months on the gun charge to be served concurrently. The judgment was filed January 13, 2012. (Filing No. 95.) Despite an appeal waiver, Espinoza timely appealed. Espinoza ultimately moved to dismiss the appeal before it could be heard. The judgment of dismissal was filed on April 6, 2012. (Filing No. 105.) His section 2255 motion was placed in the prison mailbox on April 5, 2013. (Filing No. 110 at CM/ECF p. 27.)

## *II. ANALYSIS*

Espinoza argues that defense counsel was ineffective at sentencing. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[4] and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[5] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir.

---

[4] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

[5] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

1997)) (quoting *Strickland*, 466 U.S. at 688, 694).

An evidentiary hearing is unnecessary if the claimant makes an insufficient showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

None of Espinoza's claims have merit. I will briefly discuss the substance of each claim in turn. After that, I will address the issue of prejudice.

First, Espinoza claims that his counsel was ineffective because Espinoza should not have received an obstruction-of-justice enhancement. In particular, Espinoza relies upon an appellate opinion pertaining to his comrade, Hugo Galaviz. Espinoza relies upon *United States v. Galaviz*, 687 F.3d 1042 (8th Cir. 2012), which was decided on August 6, 2012, long after Espinoza was sentenced. That case is no help to Espinoza.

In *Galaviz*, the Court of Appeals, over a dissent, held Galaviz should not have received an obstruction-of-justice enhancement. I was the sentencing judge in that case, and, as I indicated before, Galaviz was one of Espinoza's compatriots. The facts that I used to enhance Galaviz's sentence were roughly similar, but certainly not identical, to the facts I used to enhance Espinoza's sentence. Indeed, as reflected by the fact that we conducted separate evidentiary hearings for both defendants, there were important differences.

In the *Galaviz* case, the majority held that after the defendant's incarceration upon pleading guilty to distributing methamphetamine and being a felon in possession

of a firearm, Galaviz's conspiracy to murder a confidential informant in retaliation for his cooperation with the government was not a willful attempt to obstruct the administration of justice regarding the "instant offense of conviction." The court reasoned that Galaviz could not have intended to obstruct justice regarding offenses to which he had already pleaded guilty unless he thought the informant was going to testify against him at sentencing. Thus, the government was obligated to show that he expected the informant to testify at sentencing. Because the government failed to do so, Galaviz should not have received an obstruction-of-justice enhancement.

There are several reasons why *Galaviz* is of no help to Espinoza. Initially, even if *Galaviz* was on point, defense counsel could not reasonably be faulted for failing to anticipate the *Galaviz* decision in light of *United States v. Wahlstrom*, 588 F.3d 538, 544 (8th Cir. 2009), and *United States v. Carrillo*, 380 F.3d 411, 415 (8th Cir. 2004), similar cases that favored the prosecution. After all, *Galaviz* was decided many months *after* Espinoza was sentenced.

Furthermore, unlike the facts of *Galaviz*, Espinoza explicitly bargained for an obstruction-of-justice enhancement in exchange for the government's promise not to prosecute him on a solicitation-to-murder charge. This was a rational quid pro quo, and there is no reason whatever why counsel should be faulted for negotiating a bargain that Espinoza explicitly approved when I questioned him at the time of sentencing.

Still further, and unlike the situation in *Galaviz*, Espinoza had not entered a guilty plea or entered into a plea agreement at the time he solicited the murder of Lopez. In this regard, Espinoza explicitly told Malanga that he "wanted [the informant] shut up. He didn't want him to show up in court and testify." (Filing No. 115 at CM/ECF p. 27.) Thus, it is clear that Espinoza expected the informant to testify (a reasonable expectation given that Lopez bought the drugs and gun from Espinoza), and Espinoza wanted Lopez killed before he could implicate the defendant in that illegal activity. In other words, Espinoza's obstructive conduct related directly to the

-8-

unresolved merits of the criminal charges that were then pending against him.

Second, Espinoza faults his lawyer for failing to achieve an "acceptance-of-responsibility" reduction. This claim is baseless. While counsel made a diligent effort to convince me that the conduct involving the obstruction of justice was not sufficiently serious so as to warrant both an obstruction enhancement and a refusal to award Espinoza a reduction for acceptance of responsibility, he was unsuccessful. But the lawyer cannot reasonably be faulted for failing to convince me because the law was clearly against him. *See*, *e.g.*, *United States v. Smith*, 665 F.3d 951, 955-956 (8th Cir. 2011) (acceptance of responsibility not warranted where defendant told another person to lure the informant to a place where he would not be a problem, and defendant stated that he did not want the informant breathing).

Third, Galaviz argues that his counsel was ineffective for allowing Espinoza to be subjected to the 20-year statutory minimum. Espinoza admitted before Judge Zwart that he had been convicted of a drug felony. However, he correctly asserts that he served less than a year in prison for that offense. From that premise, he argues that the statutory minimum did not apply to him, and thus counsel was ineffective for not challenging the application of the statutory minimum. Espinoza is simply wrong. The statutory minimum is triggered by the qualifying felony conviction even if the offender does less than a year in prison. *See*, *e.g.*, *United States v. Guzman-Tlaseca*, 546 F.3d 571, 579 (8th Cir. 2008) (even though defendant received a suspended sentence, he was subject to 20-year statutory minimum because the court must look to the maximum penalty allowed by state statute for the felony conviction).

Fourth, Espinoza argues that his counsel was ineffective because the Guideline calculation was wrongly increased by two points as a result of a weapon. This claim is frivolous. Espinoza admitted that he distributed drugs and a gun at the same time. (E.g., Filing No. 62 at CM/ECF p. 3 ¶ 3.) Thus, the enhancement was correct.

Fifth, Espinoza argues that he was only responsible for 95.6 grams of actual

methamphetamine and his counsel was ineffective for allowing him to be held responsible for more than that amount. This argument is also frivolous. Espinoza admitted in writing and orally that he was responsible for a least 150 grams, but not more than 500 grams of actual methamphetamine. (Filing No. 62 at CM/ECF p. 3 ¶ 2 & p. 5 ¶ 1; Filing No. 66 at CM/ECF pp. 15-16.) Still further, the probation officer, in a portion of the presentence report for which there was no objection, independently calculated that Espinoza was responsible as a matter of relevant conduct for at least 201.3 grams of actual methamphetamine after applying the margin-of-error calculation used by laboratories when conducting a purity analysis. (Filing No. 93 at CM/ECF pp. 6-7 ¶¶ 28-30, 34.)

Sixth, Espinoza claims that his criminal history score was miscalculated and his counsel was ineffective for failing to see to the correction of that error. Specifically, Espinoza claims that the third-degree assault offense that took place on July 7, 2008, and the possession-of-a-controlled-substance offense that took place on July 13, 2008, should have generated only two points rather than four points in total because he was sentenced in both cases on June 12, 2009. Espinoza is mistaken. Since the offenses were committed on different dates (and were treated separately for docketing purposes) and because there must have been an intervening arrest, the criminal history score was properly calculated under Guideline § 4A1.2(A)(2). Moreover, counsel skillfully, albeit unsuccessfully, argued that I should vary or depart from the criminal history score because the sentences were imposed on the same date and the criminal history was thus not representative of the true criminal behavior. (Filing No. 115 at CM/ECF pp. 120-121.)

Finally, as to the issue of prejudice, there is no reasonable probability that the sentence I imposed would have been less harsh had counsel done something different or better. As the sentencing judge, I can state without equivocation that Espinoza is a dangerous criminal, and the sentence he received would have stood even if that meant an upward variance. I said as much at sentencing. (E.g., Filing No. 115 at CM/ECF pp. 110-113.)

Accordingly,

IT IS ORDERED that the Motion to Vacate under 28 U.S.C. § 2255 (filing no. 110) is denied and dismissed with prejudice. A separate judgment will be issued.

DATED this 5th day of August, 2013.

                                        BY THE COURT:
                                        *Richard G. Kopf*
                                        Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.